UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BURNING KNOB RESOURCES, INC., a Virginia Corporation<br><br>And<br><br>CM LAND AND COAL, INC., a Tennessee corporation<br><br>    Plaintiffs,<br><br>V.<br><br>SUMMIT ENGINEERING, INC., a Kentucky corporation,<br><br>    Defendant. | Civil Action No. _____<br><br>Judge _____<br><br><u>VERIFIED COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF</u> |

    Plaintiffs, Burning Knob Resources, Inc. ("Burning Knob") and CM Land and Coal, Inc. ("CM Land"), through counsel, for their Verified Complaint for Breach of Contract and Other Relief against Defendant, Summit Engineering, Inc. ("Summit"), respectfully states as follows:

## I.    THE PARTIES, JURISDICTION, AND VENUE

    1.     Plaintiff Burning Knob is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Hurley, Virginia.

    2.     Plaintiff CM Land is a for-profit corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in Crossville, Tennessee.

    3.     Defendant Summit, upon information and belief, a for-profit corporation organized and existing under the laws of the Commonwealth of Kentucky, with its principal place of business in Pikeville, Kentucky. Service of process on Summit is proper when made on

its registered agent for service of process, Mark David Sanders, 265 Hambley Blvd., Suite 100, Pikeville, Kentucky 41501.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the amount in controversy is in excess of $75,000 exclusive of interest and costs and the matter and action is between citizens of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and a substantial part of the property that is the subject of the action is situated in this judicial district.

## II. FACTUAL ALLEGATIONS

### A. The Relationship Between Plaintiffs And Summit.

6. Plaintiff Burning Knob and Plaintiff CM Land have, over the years, partnered on various business ventures, including those in the coal mining industry.

7. Of importance to this matter is the fact that Burning Knob is seeking a permit to mine property referred to by the Parties as the Burning Knob property located in Buchanan County, Virginia. CM Land owns the mineral at the Burning Knob property and has entered into a lease with Burning Knob pursuant to which Burning Knob will mine the property and pay royalties to CM Land. Another entity, CM Mining, LLC, has handled accounting matters for Burning Knob related to the Burning Knob property.

8. In or around July 2015, a related entity, Stearns Energy, LLC, engaged Summit to perform engineering work related to a mining prospect in McCreary County, Kentucky. Although nothing came of that particular project, Burning Knob and CM Mining, continued to use Summit, and in particular for the Burning Knob permit at issue in this matter.

2

9. It has recently come to the attention of Plaintiffs that Summit has underperformed and failed to perform work critical to Burning Knob obtaining a permit to mine the Burning Knob property, resulting in significant current and future losses to Plaintiffs.

**B.     The Burning Knob Permit.**

10. Starting in November 2017, Plaintiffs and Summit began discussing the Burning Knob property and the work that would be required to obtain a permit to mine the property. The Parties agreed upon a plan pursuant to which Summit would do the work required to file a Permit Application for Plaintiffs at agreed-upon rates. Summit further agreed that the first required filings for the permit would be submitted in February 2018. Summit represented to Plaintiffs that their goal of mining the property starting in September 2018 could be met.

11. The market for metallurgical coal during the past twelve months has been the best that it has been in twenty (20) years. The market is of course volatile, and it was therefore important to Plaintiffs that mining get underway as soon as possible.

12. Summit finally filed the permit application package with the Virginia Division of Mined Land Reclamation on May 17, 2018. Thereafter, it placed a Public Notice of Application for a Coal Surface Mining/NPDES Permit in the Buchanan County, Virginia Mountaineer on June 7, 2018, another step in the permitting process.

13. A critical component of obtaining a surface mining permit such as that being applied for on behalf of Burning Knob is a Jurisdictional Determination by the Army Corps of Engineers. In its simplest terms, the Army Corps of Engineers must determine if streams or wetlands will be impacted by the proposed mining plan. If no such impacts are found, the Corps will issue a letter that no permit will be required by the Corps. If there are streams and wetlands that will be impacted, the Corps will dictate mitigation factors that must be undertaken as part of

3

the mining and, ultimately, whether there are water issues that preclude a permit from being issued.

14. If a state permit is issued and the Army Corps of Engineers subsequently determines that the property includes streams or wetlands, the state permit can be invalidated. If the Corps investigates the site and finds wetlands before a permit is issued by the state, the state mining permit will not be issued. If the Corps does not find wetlands but the federal Mine Safety and Health Administration finds wetlands or streams, significant penalties, Cessation Orders and permit revocation are likely. In that scenario, it is likely to take at least six months to rehabilitate the site, if it can be rehabilitated at all, because the site must be returned to its now-unknown original, pre-mining condition.

15. Once it receives the required application materials from a permit applicant, the Army Corps of Engineers determines whether the applicant has adequately disclosed any streams or wetlands at the proposed mining site. The Corps will either accept the materials prepared by the engineering firm related to streams and wetlands, providing a "go" letter to the permittee, or will advise that it is sending a representative to verify that there are no water issues at the subject site. Again, if no issues are found, the Corps will issue the "go" letter. If issues are discovered, the permitting process can be stopped, and if a permit has been issued, that permit can be rescinded.

16. The submittals to the Army Corps of Engineers must include six months of water analysis reports from any groundwater that exists on a proposed mining site.

17. Starting at least as early as May 2018 and until very recently, Summit assured Plaintiffs that there were no wetlands or streams at the Burning Knob property, that the required

4

testing had been completed and that the required submissions had been made to the Army Corps of Engineers.

18. Because of issues with the quality, promptness and thoroughness of Summit's work, in July 2018 Plaintiffs pulled the Burning Knob project from Summit and retained another engineering entity, Terratech Engineering, to take over.

19. Representatives of Terratech have determined that the Burning Knob property does have wetlands and that Summit never submitted water quality testing or even notification of the presence of wetlands to the Army Corps of Engineering. Plaintiffs remain unclear as to whether the water analysis and other documents required to be submitted to the Corps were ever even prepared by Summit, although Summit certainly billed for that work.

20. Because of the discovery of wetlands, Terratech has had to file a new Permit Application with the Virginia Division of Mined Land Reclamation and has filed with the Army Corps of Engineers for a core Jurisdictional Determination. The filing with the Corps was submitted in mid-November 2018.

21. Both the new permit application and the Corps filing required significant adjustments to Burning Knob's mining plan. Under the original plan of mining, Burning Knob anticipated mining all four seams of coal (the Alma, Pond Creek, Clintwood and Eagle seams) at the property and reasonably expected to recover 1.5 million tons of coal. Burning Knob also reasonably anticipated netting $30 per ton of coal. CM Land, by extension, expected to receive royalties on 1.5 million tons of coal.

22. Under the new mining plan, sixty percent of the coal in the subject seams at the Burning Knob property will no longer be accessible for mining. In addition, because the

5

highwall method of mining will now be required (as opposed to the originally planned mountain top removal method), Burning Knob will likely recover only 50% of the coal that it can access.

23. Burning Knob has invested significant amounts of time and money into the property based on Summit's representations that there were no wetlands at the property, that the mining plan Summit helped create was viable and that the property could be permitted. Burning Knob will not recover the bulk of that investment given the limited mining that it has now learned is possible, and would not have made that investment but for the representations made by Summit about the work it was performing, about the presence of wetlands at the property and about the submissions it claimed to have made to the Army Corps of Engineers but which were never submitted, which has resulted in damages believed to be in excess of $5.0 million.

24. Burning Knob has also had to pay Terratech for work that Summit had billed for but never performed.

25. Finally, Burning Knob could lose the CM Land lease for lack of mining because of the delays caused by Summit's actions and omissions that have prevented mining from occurring to date.

26. CM Land has also contributed toward the investments made to obtain the Burning Knob permit and to prepare the property for mining, including but not limited payments to Summit. It has yet to receive any royalties under its lease, and its royalties will be significantly lower than they would have been had Summit's representations about the mining plan and the condition of the property been accurate, as a result incurring damages believed to be in excess of $2.0 million.

## COUNT I

### (Breach Of Contract)

27. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. In or around November 2017, Burning Knob and CM Land entered into an agreement with Summit pursuant to which Summit agreed to take all measures necessary for Burning Knob to obtain a permit to surface mine the Burning Knob property in Buchanan County, Virginia.

29. Summit represented to Burning Knob and CM Land that the initial Permit Application would be submitted in February 2018.

30. Thereafter, Summit represented to Burning Knob and CM Land that the mining plan included in the Permit Application and that provided for mining all four seams at the Burning Knob property was reasonable and could be permitted.

31. Summit represented to Burning Knob and CM Land that it had prepared all of the necessary documentation and analysis for submitting a request for a core Jurisdictional Determination by the Army Corps of Engineers and represented that the requisite application had been submitted to the Army Corps of Engineers.

32. Summit represented to Burning Knob and CM Mining that there were no wetlands or streams on the Burning Knob that would impact the ability to obtain a permit and to mine the property.

33. All of these representations by Summit were false.

34. Summit submitted invoices for the work it purported it had performed, and Plaintiffs paid certain of those invoices.

7

35. These actions and omissions by Summit constitute breaches of the agreement between Plaintiffs and Summit.

36. Plaintiffs are therefore entitled to recover compensatory damages from Summit arising from its breaches of the Parties' agreement, the exact amount of which will be determined at trial in an amount in excess of the minimum diversity jurisdictional limits of this Court.

## COUNT II

### (Breach Of Implied Covenant Of Good Faith And Fair Dealing)

37. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Every contract carries with it an implied covenant imposed upon the parties thereto to act in good faith and with fair dealing toward each other in the performance of the contract.

39. At all times relevant hereto, and since at least November 2017, there was therefore imposed upon Summit an implied covenant to perform its obligations to Burning Knob and CM Land in good faith and with fair dealing.

40. By breaching the Parties' agreement as described in Paragraphs 29 through 34, *supra*, Summit breached this implied covenant of good faith and fair dealing by making false representations to Plaintiffs and by failing to meet the deadlines agreed to by the Parties, such that Burning Knob was precluded from commencing mining at the Burning Knob property and CM Land was denied the royalties which it reasonably expected to receive.

41. As a direct and proximate result of Summit's breach of the implied covenant of good faith and fair dealing, Burning Knob and CM Land suffered financial losses, and Summit benefitted.

42. Plaintiffs are therefore entitled to recover compensatory damages from Summit arising from this breach of the implied covenant of good faith and fair dealing, the exact amount of which will be determined at trial in an amount in excess of the minimum diversity jurisdictional limits of this Court.

## COUNT III

### (Unjust Enrichment)

43. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Summit invoiced for work and was paid for work that it did not perform, or that it performed in a sub-standard manner.

45. Summit has therefore been unjustly enriched at the expense of Burning Knob and CM Land, and it is unjust and inequitable to permit Summit to retain monies and property – including any work that Summit actually did perform – at the expense of Plaintiffs.

46. As a direct and proximate result of Summit's unjust enrichment at the expense of Burning Knob and CM Land, Plaintiffs have suffered and will continue to suffer financial losses, and Summit has wrongfully benefited.

47. Plaintiffs are therefore entitled to recover compensatory damages from Summit arising from Summit's unjust enrichment, the exact amount of which will be determined at trial in an amount in excess of the minimum diversity jurisdictional limits of this Court.

## COUNT IV

### (Grossly Negligent Misrepresentations)

48. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. In affirmatively representing that Summit could and would tender the Burning Knob Permit Application in February 2018, that Summit had completed all work necessary for submission to the Army Corps of Engineers and had submitted the request for a core Jurisdictional Determination to the Army Corps of Engineers, and that there were no streams or wetlands on the Burning Knob property that would impact Burning Knob's ability to mine at the property, Summit had a duty to not supply or make false, misleading, inaccurate or incomplete representations to Plaintiffs.

50. Summit had a pecuniary interest in maintaining Plaintiffs' business and was obligated to exercise reasonable care and competence in communicating with Plaintiffs with respect to the parties' relationship, timing of the Permit Application submission, the reliability and viability of the mining plan, the status of the Permit Application and underlying work performed thereon and as to the condition of the Burning Knob property with respect to the presence of streams and wetlands.

51. Summit knew or should have known that Plaintiffs would rely upon statements and representations made by it that were grossly negligent or reckless with respect to the parties' relationship, the Permit Application and underlying work performed and the condition of the Burning Knob property with respect to the presence of streams and wetlands.

52. Plaintiffs relied on the grossly negligent or recklessly made misrepresentations by Summit, and Summit lulled Plaintiffs into believing that it had performed the work required, that it had adequately inspected the subject property and found no wetlands or streams thereon, that Burning Knob would be in a position to mine according to the mining plan proposed by Summit by September 2018 and that it was reasonable for Plaintiffs to continue to retain Summit and to invest significant funds in anticipation of mining.

53. As a direct and proximate result of such grossly negligent and reckless misrepresentations by Summit, Plaintiffs are entitled to an award of both compensatory and punitive damages, in separate amounts, the exact amounts to be determined at trial in excess of the minimum jurisdictional limits of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Burning Knob and CM Land request Judgment on their Verified Complaint for Breach of Contract and Other Relief herein as follows:

A. Judgment on Count I in their favor and against Summit for compensatory damages for breach of contract in an amount to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

B. Judgment on Count II in their favor and against Summit for compensatory damages for breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

C. Judgment on Count III in their favor and against Summit for compensatory damages for unjust enrichment in an amount to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

D. Judgment on Count IV in their favor and against Summit for compensatory and punitive damages, in separate amounts, for grossly negligent misrepresentations in amounts to be determined at trial in excess of the minimum diversity jurisdictional limits of this Court;

E. A trial by jury on all Counts of the Complaint so triable;

F. A reasonable attorneys' fee; and

G. Such other and further relief to which Plaintiffs appear entitled in addition to the costs and disbursements of this action.

Respectfully submitted,

/s/ Aaron B. Houchens
_____
AARON B. HOUCHENS (VSB #80489)

AARON B. HOUCHENS, P.C.
111 East Main Street
P.O. Box 1250
Salem, Virginia 24153
Telephone: (540) 389-4498
Facsimile: (540) 339-3903
aaron@houchenslaw.com

and

RICHARD A. GETTY
(*Pro Hac Vice* Admission pending)
    and
DANIELLE HARLAN
(*Pro Hac Vice* Admission pending)

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile: (859) 259-1909
rgetty@gettylawgroup.com
dharlan@gettylawgroup.com

COUNSEL FOR PLAINTIFFS,
BURNING KNOB RESOURCES, LLC
AND CM LAND AND COAL, INC.

# VERIFICATION

I, Dale Murray, as President of CM Land and Coal, Inc., after first being duly sworn, state that I have read the factual allegations in the Verified Complaint for Breach of Contract and Other Relief set out above, and that they are true and correct to the best of my knowledge and belief.

_____
DALE MURRAY

COMMONWEALTH OF KENTUCKY )
)
FAYETTE COUNTY )

Subscribed and sworn to before me by Dale Murray on this the 2nd day of January, 2019.

_____
NOTARY PUBLIC
Notary ID No. 612352

My commission expires: 11/30/22.

## VERIFICATION

I, Robert A. Crowder, as President of Burning Knob Resources, Inc., after first being duly sworn, state that I have read the factual allegations in the Verified Complaint for Breach of Contract and Other Relief set out above, and that they are true and correct to the best of my knowledge and belief.

_____
ROBERT A. CROWDER

COMMONWEALTH OF KENTUCKY )
                                                      )
PIKE COUNTY                       )

Subscribed and sworn to before me by Robert A. Crowder on this the 8 day of January, 2019.

_____
NOTARY PUBLIC
Notary ID No. 570508

My commission expires: 1-31-2021.

**CAROL JAMES**
Notary Public - State at Large
Kentucky
My Commission Expires Jan. 31, 2021
Notary ID 570508

dhbpld2104

14